ROSEMARY LEDET, Judge.
| tin this criminal appeal, the defendant, David R. Epperley, seeks review of his convictions and sentences in six cases[1] that have been consolidated on appeal. For the reasons that follow, we affirm in part, as amended, in 2014-KA-0278; vacate in part; and remand with instructions for resentencing as to 2014-KA-0259.

STATEMENT OF THE CASE

On October 7, 2010, Mr. Epperley was charged by bill of information with four counts of misapplication of payments received from Chien-Chen Cheng, a violation of La. R.S. 14:202.[2] On that same date, Mr. Epperley was charged with one count of misapplication of payments received from Debra Cook and one count of theft of currency valued at five hundred dollars or more belonging to Ms. Cook, the latter being a violation of La. R.S. 14:67(B)(2).[3] On October 14, 2010, Mr. Epperley was charged with one count of misapplication of payments received from |2Earnest Thi-bodeaux.[4] On February 14, 2011, Mr. Ep-perley was charged with two counts of misapplication of payments received from Patrick Garner, Shawnte Garner, or both.[5] On September 26, 2011, Mr. Epperley was charged with one count of theft of curren *725 cy valued at one thousand five hundred dollars or more belonging to Wayne Ferrier, a violation of La. R.S. 14:67(B)(1).[6] On October 4, 2011, Mr. Epperley was charged with one count of theft of currency valued at one thousand five hundred dollars or more belonging to Joseph Per-riatt.[7]
On November 30, 2011, Mr. Epperley pled guilty[8] as charged in each of the above-cited six cases and executed a Felony Waiver of Constitutional Rights Plea of Guilty Form (also known as a Boykin[9] form) in connection with each case.[10]
In 2014-KA-0259, the Boykin form executed by Mr. Epperley provides that he pled guilty to four counts of misappropriation of funds. The form further evidences that the sentencing range for four counts of misappropriation of funds was zero to five years and that the sentence he received was five years, suspended, “concurrent,”[11] with active probation,[12] and “full restitution” owed.
lain 2014-KA-0262, the Boykin form executed by Mr. Epperley provides that he pled guilty to misappropriation of funds and theft greater than five hundred dollars. The form further evidences that the sentencing range for misappropriation was zero to five years and the sentencing range for theft was zero to ten years. Mr. Ep-perley acknowledged that the sentence he would receive was ten years suspended for the theft charge and five years for the misappropriation charge, to run concurrently with each other. The sentences were suspended, with full restitution in the amount of $33,500.00, and Mr. Epperley was placed on five years active probation. The Boykin form further provided that the sentences were to run concurrently with 2014-KA-0281 and 2014-KA-0282, and consecutively with 2014-KA-0259, 2014-KA-0275, and 2014-KA-0278.
In 2014-KA-0275, the Boykin form executed by Mr. Epperley indicates that he pled guilty to one count of misappropriation of funds. The form further evidences that the sentencing range was zero to five years, and Mr. Epperley acknowledged that the sentence he received was five years, suspended, with five years of active probation, full restitution, and the sentence was to run concurrently with 2014-KA-0259 and 2014-KA-0278, but consecutively with 2014-KA-0262, 2014-KA-0281, and 2014-KA-0282.
In 2014-KA-0278, the Boykin form executed by Mr. Epperley provides that he pled guilty to two counts of misappropriation of funds. The form further evidences that the sentencing range was zero to three years. Mr. Epperley acknowledged that he would receive a sentence of three years, suspended, with three years of active probation, and he would pay full restitution. The form also provides that the *726 sentence would run concurrently with 2014-KA-0275 and 2014-jKA-0259,4 and consecutively with 2014-KA-0262, 2014-KA-0281, and 2014-KA-0282.
In 2014-KA-0281, the Boykin form executed by Mr. Epperley provides that he pled guilty to one count of theft over one thousand five hundred dollars, and the sentencing range was zero to ten years. Mr. Epperley acknowledged that the sentence he would receive was ten years, suspended, with five years of active probation, and full restitution in the amount of $29,500.00. The form evidences that the sentence was to run concurrently with 2014-KA-0262 and 2014-KA-0282, and consecutively with 2014-KA-0259, 2014-KA-0275, and 2014-KA-0278.
In 2014-KA-0282, the Boykin form executed by Mr. Epperley provides that he pled guilty to one count of theft greater than one thousand five hundred dollars, and the sentencing range was zero to ten years. Mr. Epperley acknowledged that his sentence would be ten years, suspended, with five years active probation, and $101,400.00 in restitution. The form further evidences that the sentence was to run concurrently with 2014-KA-0281 and 2014-KA-0262, and consecutively with 2014-KA-0259, 2014-KA-0275, and 2014-KA-0278.
Each Boykin form was signed and initialed by Mr. Epperley. Each form was also signed by his counsel and the district court, and each form provided that Mr. Epperley “underst[ood] that [he had] a right to a trial by [j]udge or [j]ury and if convicted a right to appeal and by entering a plea of guilty in this case [he was] waiving [his] rights to trial and appeal.”
On January 20, 2012 and on January 27, 2012, the district court held restitution hearings with respect to the three cases that Mr. Epperley did not agree to a restitution amount on the Boykin forms. On January 27, 2012, the district court | f,ordered restitution in the amounts of $61,161.42[13] in 2014-KA-0259, $258,681.00 in 2014-KA-0275, and $100,681.01 in 2014-KA-0278. According to the minute entry from that same date, the district court then sentenced Mr. Epperley pursuant to the plea agreements for all six cases.[14] On appeal, this court found that, according to the transcript, the district court failed to actually impose sentences in three of the cases. This court thus dismissed the prior three appeals and remanded the matters to the district court for sentencing. State v. Epperley, 12-0766, pp. 1-2 (La.App. 4 Cir. 6/19/13), 119 So.3d 942, 942-43; State v. Epperley, 12-0789, pp. 1-2 (La.App. 4 Cir. 6/19/13), 119 So.3d 941, 941-42; and State v. Epperley, 12-1094, pp. 1-2 (La.App. 4 Cir. 6/19/13), 118 So.3d 1268, 1268-69.[15]
Accordingly, the district court sentenced Mr. Epperley on August 22, 2013, in accor *727 dance with the plea agreements for all six cases, as follows:
All right. As to Mr. David Epperley, in Case No. 500-897 [2014-KA-0259]. Mr. David Epperley entered a plea of guilty to four counts of misapplication of payments.
Your sentence is five (5) years in the custody of the Department of Corrections, suspended. Five (5) years of Active Probation.
The sentence is to run concurrently with each count, as well as Case Nos. 501-105 [2014-KA-0275], and 508-758 [2014-KA-0278].
| f,However, the [s]entence is to run consecutively to Case Nos. 500-898 [2014-KA-0262], 508-788 [2014-KA-0281], and 508-935 [2014-KA-0282].[16]
The Restitution to be paid under this case number is $30,580.71.
As to Case No. 500-898 [2014-KA-0262], Mr. David Epperley entered a plea of guilty to one count of misapplication of payments and one count of theft over $500.
As to Count 1 in the Bill of Information, your [s]entence is five (5) years in the custody of the Department of Corrections, suspended. Five (5) years of Active Probation to run concurrently with the other count in the Bill of Information, as well as 508-788 [2014-KA-0281] and 508-935 [2014-KA-0282],
The [s]entence will run consecutively to 500-897 [2014-KA-0259], 501-105 [2014-KA-0275], and 503-758 [2014-KA-0278].
Restitution to be paid is $33,500.
As to Count 2, of the Bill of Information, your [s]entence is ten (10) years in the custody of the Department of Corrections, suspended. Five (5) years of Active Probation[,][t]o run concurrently with the other count in the Bill of Information, as well as Case Nos. 508-788 [2014-KA-0281], and 508-935[2014-KA-0282]. However, consecutively to 500-897 [2014-KA-0259], 501-105[2014-KA-0275], and 503-758 [2014-KA-0278].
As to Case No. 501-105 [2014-KA-0275], Mr. David Epperley entered a plea of guilty to one count of misapplication of payments. The [sentence is five (5) years in the custody of the Department of Corrections, suspended. Five (5) years of Active Probation.
The [s]entenee is to run concurrently with Case Nos. 500-897 [2014-KA-0259], and 503-758 [2014-KA-0278]. However, the [s]entenee will run consecutive to the [sentences imposed under Case Nos. 500-898 [2014-KA-0262], 508-788 [2014-KA-0281], and 508-935 [2014-KA-0282].
The restitution to be paid under this case number is $253,681.
|7As to Case No. 503-758 [2014-KA-0278], Mr. David Epperley entered a plea of guilty as to two counts of misapplication of payments valued under $1,000. The [sentence is three (3) years in the custody of the Department of Corrections, suspended. Three (3) years of Active Probation to run concurrently with the two counts listed in the Bill of Information, as well as Case Nos. 500-897 [2014-KA-0259] and 501-105 [2014-KA-0275]. However, the [sentence will run consecutive to 500-898 [2014-KA-0262], 508-788 [2014-KA-0281], and 508-935 [2014-KA-0282],
*728 The restitution to be paid under this case number is $106,681.01.[17]
As to Case No. 508-788 [2Ó14-KA-0281], Mr. David Epperley entered a plea of guilty to one count of theft over $1500. Your sentence is ten (10) years in the custody of the Department of Corrections, suspended. Five (5) years of Active Probation!,] [t]o run concurrently with the [sentences imposed under Case Nos. 500-898 [2014-KA-0262], and 508-935 [2014-KA-0282].
However, consecutive to the [sentences imposed under Case Nos. 500-897 [2014-KA-0259], 501-105 [2014-KA-0275], and 504-758 [2014-KA-0278],
Restitution to be paid in this case number is $29,500.
Finally, in Case No. 508-935 [2014— KA-0282], Mr. David Epperley entered a plea of guilty to one count of theft over $1500. The [s]entence imposed is ten (10) years in the custody of the Department of Corrections, suspended. Five (5) years of Active | ^Probation, to run concurrent with the Sentences imposed under Case Nos. 508-788 [2014-KA-0281], and 500-898 [2014-KA-0262].
Consecutively to the [sentences imposed under 500-897 [2014-KA-0259], 501-105 [2014-KA-0275], and 503-758 [2014-KA-0278].
Restitution to be paid under this case number is $101,400.
The district court also noted that in 2014-KA-0281 and 2014-KA-0282 both guilty pleas were accepted under La. C.Cr.P. art. 893, and the sentences for those two cases were deferred. The district court further noted that Mr. Epperley could file a motion to expunge those convictions once his probationary period was complete. Mr. Epperley filed motions to reconsider in each case, which the district court denied on November 14, 2013. This appeal followed.

DISCUSSION

Assignment of Error Number 1

In his first assignment of error, Mr. Epperley argues that the district court erred in sentencing him to felony sentences when the bills of information regarding misapplication of funds failed to state a value of the funds. Mr. Epperley also argues that the district court erred in accepting the pleas for theft when the evidence before the court showed no factual basis for the pleas. He further argues that the theft counts referenced the date of the contract, not the date of an alleged taking, resulting in the misapplication of the correct sentencing provision for one of the theft charges. For ease of reference, we divide these arguments into the follow *729 ing two parts — (i) value of misapplied funds and (ii) factual basis for the theft charges.

(i) Value of Misapplied Funds

|9Mr. Epperley contends that the value of the misappropriation was essential to his charges under La. R.S. 14:202,[18] because the value determined whether the crime was a misdemeanor or a felony, the size of a jury, and the sentencing exposure.[19] Mr. Epperley further contends that this omission was not subsequently cured during discovery or in a preliminary hearing. Mr. Epperley submits that when no value is stated in the bill of information, the district court must presume that the violation is a misdemeanor, rather than a felony, as he was sentenced.
Mr. Epperley cites State v. Kenniston, 07-0849, p. 6 (La.App. 4 Cir. 1/16/08), 976 So.2d 226, 229 and State v. Ferguson, 10-0199, p. 3 (La.App. 4 Cir. 6/30/10), 43 So.3d 291, 293, contending that in those cases, the bills of information |inwere similarly deficient in failing to indicate the amount of money misappropriated. Mr. Epperley states that where the bills of information have errors or omissions as to value, the defendant is not informed as to possible defenses or the sentencing exposure. He thus states that a plea to a defective bill is not knowingly made, is invalid, and cannot support a sentence.
The State counters that Mr. Epperley’s appeal should not be considered by this court because the Boykin forms plainly evidence that he waived his right to appeal. Further, the sentences he received at the hearing on August 22, 2013 are the sentences to which he agreed when he pled guilty on November 30, 2011. State v. Johnson, 354 So.2d 1036, 1037 (La.1978) (recognizing that [njormally, a plea of guilty waives a defendant’s right to appeal) (citing Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). The State submits that Mr. Epperley also acknowledged that he waived his right to appeal in open court.
The State relies upon La.C.Cr.P. art. 881.2 A(2), which provides that “[t]he de *730 fendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.”[20] The State cites State v. Smith, 09-1043, p. 6 (La.App. 5 Cir. 6/29/10), 43 So.3d 261, 265, writ denied sub nom., State ex rel. Smith v. State, 13-2196 (La.4/17/14), 138 So.3d 624, in which the court discussed La.C.Cr.P. art. 881.2A(2) and noted that “[tjhis prohibition encompasses sentences imposed pursuant to plea agreements setting forth specific sentences as well as plea agreements with sentencing caps.” Id. (citing State v. Bolton, 02-1034, p. 10 (La.App. 5 Cir. 3/11/03), 844 So.2d 135, 142); see also State v. Dominick, 13-0270, p. 13 (La.App. 4 Cir. 1/30/14), 133 So.3d 250, 258 (“ ‘[i]t is well settled that entry of an unqualified plea of guilty waives all non jurisdictional defects occurring prior thereto, and precludes review thereof either by appeal, or where appeal is unavailable, by supervisory review.’ ”) (citing State v. Pete, 12-0378, pp. 5-6 (La.App. 4 Cir. 3/20/13), 112 So.3d 353, 357, writ denied sub nom., State ex rel. Pete v. State, 13-1620 (La.1/17/14), 130 So.3d 944, quoting State v. Sellers, 04-1922, 04-1923, p. 5 (La.App. 4 Cir. 4/20/05), 902 So.2d 418, 421).
The State further argues that even assuming Mr. Epperley’s appeal is properly before this court, none of the cases cited by Mr. Epperley supports his argument. The State notes that in Kenniston, this court rejected the defendant’s argument that because the bill of information did not allege an amount of money misappropriated, the defendant was required to be sentenced under the misdemeanor provision of La. R.S. 14:202. Id., 07-0849 at pp. 3-8, 976 So.2d at 228-31. The State notes that this argument was rejected in Kenniston because the defendant was advised of the sentencing range for his charges and he testified that he was guilty of the crimes that merited those sentencing ranges. Id. The State further notes that in Ferguson, the defendant was not advised of the correct sentencing range of the crimes to which he was pleading guilty. Id., 10-0199 at pp. 4-5, 43 So.3d at 294. Nevertheless, this court held that the omission of the amount of funds misapplied on the bill of information was harmless because the defendant was aware of the amount that was alleged to have been misapplied, and the defendant did not allege any prejudice either at the time he pled guilty or on appeal. Id.
Mr. Epperley’s appeal regarding the bills of information is properly before this court because the failure of the State to include the value of funds misapplied | iaby Mr. Epperley was a patent error. See Ferguson, 10-0199 at p. 3, 43 So.3d at 293. Although the bills of information do not allege a value of the funds misapplied by Mr. Epperley in each count, and although the penalty for a violation of La. R.S. 14:202 is based upon the value of the misappropriated funds, Mr. Epperley pled guilty with the understanding that he would receive five-year suspended sentences, which could only occur with violations of the most severe grade of the offense. See State v. Kenniston, 07-0849 at p. 9, 976 So.2d at 231. Additionally, Mr. Epperley has not alleged that his guilty plea was not intelligently entered, nor has he shown any prejudice from the state’s omission of the value of the misapplied funds in the bill of information. See Ferguson, 10-0199 at p. 5, 43 So.3d at 294. Thus, any error in the bill of information is harmless, and Mr. Epperley’s argument that the district court erred in sentencing him to felony sentences when the bills of information regarding misapplication of *731 funds failed to state a value of the funds misapplied lacks merit. See Kenniston, 07-0849 at pp. 6-9, 976 So.2d at 229-31; Ferguson, 10-0199 at pp. 3-5, 43 So.3d at 293-94.

(ii) Factual Basis for the Theft Charges

In regard to the three cases in which Mr. Epperley pled guilty to theft,[21] he argues that there was no taking with an intent to defraud at the time of the taking and that to charge him with theft, the State had to present evidence that he had the intent to defraud each of the homeowners at the time he received money from them. Specifically, Mr. Epperley contends that the State had no evidence that Mr. Epperley was not in good faith when he entered into the contracts with the homeowners because Mr. Epperley made some effort to fulfill the contracts.
lisMr. Epperley also alleges that because the dates of the contracts and not the dates of the alleged takings were used on the bills of information, one of the theft charges resulted in the application of the wrong sentencing provision. The bill of information for 2014-KA-0262 alleged that a theft of more than five hundred dollars occurred on July 28, 2009, the date Ms. Cook entered into a contract with Mr. Epperley’s company, rather than the date Mr. Epperley allegedly committed theft with intent to defraud Ms. Cook. Mr. Ep-perley explains that the penalty provision of La. R.S. 14:67 was amended by 2010 La. Sess. Law Serv. Act 585, effective August 15, 2010; therefore, the erroneous date on the bill of information resulted in an improper maximum sentence of ten years rather than the zero to five-year range provided in the amended version of La. R.S. 14:67(B)(2).[22]
Although Mr. Epperley argues that there was no factual basis for the theft pleas because the State did not have evidence that he had the intent to defraud each of the homeowners at the time he received money from them, the gist of this argument is that the evidence was insufficient. There is no review for sufficiency of the evidence when a defendant has pled guilty and waived his right to appeal. See State v. Lewis, 10-1022, p. 4 (La.App. 5 Cir. 9/27/11), 75 So.3d 495, 498 (“[a] plea of guilty by its nature admits factual guilt and relieves the State of the necessity to prove it by a contested trial. Therefore, a defendant cannot challenge the sufficiency of the evidence after he pleads guilty.”) (citing State v. Smith, 07-815, p. 4 (La.App. 5 Cir. 3/11/08), 982 So.2d 821, 824 n. 3; State v. Robinson, 09-1269, p. 6 (La.App. 4 Cir. 5/12/10), 38 So.3d 1138, 1141). Additionally, Mr. 114Epperley pled guilty to the bills of information and thereby to the dates of the offenses therein; thus, he waived any non jurisdictional defects. See Pete, 12-0378 at pp. 5-6, 112 So.3d at 357. This assignment of error lacks merit.

Assignment of Error Number 2

In his second and final assignment of error, Mr. Epperley argues that the district court erred in imposing sentences that violate the prohibition in the Eighth Amendment against cruel and unusual punishment, the prohibition in the Louisiana Constitution against excessive punishment, or both, by sentencing a first-time *732 offender to the maximum sentences, ordering that some of the sentences be served consecutively, and adding required restitution that exceeds the amount allowed under the statute for the charged offenses or for the actual costs.[23]
In State v. Williams, 12-0050, pp. 11-12 (La.App. 4 Cir. 1/16/13), 108 So.3d 319, 328, writ denied sub nom., State ex rel. Williams v. State, 13-0414 (La.7/31/13), 118 So.3d 1115, this court recognized the standard for reviewing an excessive sentence claim:
In State v. Smith, 2001-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4, the Supreme Court set forth the standard for evaluating a claim of excessive sentence, directing that even if a sentence is within statutory limits, it can be reviewed for excessiveness. Article I, § 20 of the Louisiana Constitution of 1974 provides that no law shall subject any person to excessive punishment. A sentence is considered unconstitutionally excessive when the punishment imposed is grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a 1 ir,sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). The relevant question for appellate review is not whether another sentence might have been more appropriate, but whether the trial court abused its broad sentencing discretion. Smith, pp. 6-7, 839 So.2d at 4.
In State v. Batiste, 2006-0875, p. 18 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 820, this Court further explained that the role of the appellate court in reviewing a claim of excessive sentence is to determine whether the trial court adequately complied ' with the statutory guidelines enunciated in Louisiana Code of Criminal Procedure article 894.1, as well as whether the facts of the case warrant the sentence imposed. If there is adequate compliance with article 894.1, the reviewing court must determine whether the sentence is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious offenders. Id.
As noted above, Mr. Epperley’s argument that his sentences are constitutionally excessive[24] has three parts: (i) that a first time offender should not receive maximum sentences; (ii) that he was promised all concurrent sentences by the district court and should not have received consecutive sentences; and (iii) that the district court ordered restitution amounts that exceeded what is allowed by statute.

(i) Maximum Sentences

Mr. Epperley contends that the district court’s sentencing him to the maximum sentences is constitutionally ex *733 cessive and thus his sentences should be vacated and the case remanded. Mr. Ep-perley states that he was forty years old at the time of sentencing, married with children, and had no criminal record. He contends that the number of cases that were charged should not be considered an aggravating factor, as losses on one project had a domino effect on the other' projects.
|1fiWith regard to the misapplication charges, Mr. Epperley submits that the district court did not calculate his sentences correctly based upon La. R.S. 14:202(C), which states as follows:
When the amount misapplied is greater than one thousand dollars, whoever violates this Section shall be fined not less than one hundred dollars nor more than five hundred dollars, or imprisoned with or without hard labor for not less than ninety days nor more than six months, or both, for each one thousand dollars in misapplied funds, provided that the aggregate imprisonment shall not exceed five years.
He contends that the district court should have sentenced him by increments of up to six months for every $1,000.00 of misapplied funds, rather than imposing the maximum five years in 2014-KA-0259, 2014-KA-0262, and 2014-KA-0278. Mr. Epper-ley states that to impose a five-year sentence on any one count, the amount of money misapplied in that count would have to exceed $10,000.00.[25] In making his calculations under La. R.S. 14:202, Mr. Ep-perley used only the amount of the liens for each case and not the amount of the actual misapplied funds.
Mr. Epperley cites no authority for his argument that the amount of misapplied funds used to calculate the penalty for a violation of La. R.S. 14:202 is limited to the amount of the lien(s) resulting therefrom. According to La. R.S. 14:202, the total amount of “misapplied funds” should be calculated in reaching a defendant’s penalty, not just the amount of the lien(s). In all of Mr. Epperley’s cases, the amount of misapplied funds exceeded $10,000.00. Thus, his sentences were correctly calculated.
|17With regard to the theft charges, Mr. Epperley contends that the sentences were excessive in light of State v. Salameh, 09-1422, p. 1 (La.App. 3 Cir. 5/5/10), 38 So.3d 568, 568, in which the defendant was sentenced to ten years, with five years suspended, for theft from her employer. The defendant was a first time offender and was forty-three years old at the time of sentencing. Id., 09-1422 at p. 5, 38 So.3d at 571. The defendant appealed her sentence as excessive; and the court affirmed, finding an adequate basis for the sentence imposed, as she stole over $500,000.00 from a family-owned business over a period of seven years. Id. Mr. Epperley notes that the aggregate amount of all the liens in his cases is substantially less than the amount in Salameh. Further, the defendant in Salameh intentionally took the money, while he accounts his thefts for bad business practices. Yet, he was sentenced to a total of twenty-five years imprisonment.
The State counters that Mr. Epperley’s sentences were not excessive because he agreed to the terms of the sentences when he executed the Boykin forms. Additionally, the State contends that Mr. Epper-ley’s sentence is not the maximum sentence because it is suspended, and he is not imprisoned.
*734 Mr. Epperley knowingly, intelligently, and voluntarily entered an unqualified guilty plea. As noted at the outset, this court has recognized that “[i]t is well settled that entry of an unqualified plea of guilty waives all non jurisdictional defects occurring prior thereto, and precludes review thereof either by appeal, or where appeal is unavailable, by supervisory review.”' Pete, 12-0378 at pp. 5-6, 112 So.3d at 357 (quoting Sellers, 04-1922, 04-1923 at p. 5, 902 So.2d at 421). Accordingly, because Mr. Epperle/s claim that the sentences for theft are excessive involves a non jurisdictional defect, we decline to entertain it. See Dominick, 13-0270 at pp. 12-13, 133 So.3d at 257-58; see also Pete, 12-0378 at p. 6, 112 So.3d at 357.

(11) Consecutive Sentences

Mr. Epperley contends that the district court indicated when it originally accepted his pleas on November 30, 2011, that his sentences would be served concurrently, but on January 27, 2012 the district court indicated that the sentences would be consecutive and concurrent, to which Mr. Epperley objected. Mr. Epperley further argues that when the district court indicated that the sentences would be concurrent and consecutive, the district court failed to articulate a basis for overriding the presumption of concurrent sentences as provided in La.C.Cr.P. arts. 883[26] and 481.[27] Accordingly, Mr. Epperley argues that the condition that the sentences be served consecutively must be vacated, or, alternatively, the matter should be remanded to allow him to withdraw his guilty pleas in all of his cases.
The State submits that Mr. Epperley’s argument that the sentences are excessive because some of them were imposed consecutively lacks merit because 113the Boy-kin forms plainly indicate that certain sentences were to be served concurrently, while other sentences were to be served consecutively, and Mr. Epperley agreed to these sentencing terms. The State submits that a Boykin form is analogous to a civil compromise. The State thus contends that the district court could not modify it. In support, the State cites Braun Welding Supply, Inc. v. Praxair, Inc., 94-1336, p. 7 (La.App. 3 Cir. 4/5/95), 654 So.2d 388, 392, and State v. Honeycutt, 41,601, p. 8 (La.App. 2 Cir. 2/28/07), 953 So.2d 914, 920.[28] Furthermore, the State notes that *735 the district court correctly indicated that Mr. Epperley’s sentences were consecutive and concurrent at the sentencing hearing on August 22, 2013.[29]
While Mr. Epperley did not object to his sentences at the sentencing hearing on August 22, 2013, he filed a motion to reconsider sentence. In his motion to reconsider sentence, he argued that consecutive sentences were not justified in his cases because of the district court’s statements. Accordingly, we find that this issue was preserved for review on appeal.
li>ftWe find that Mr. Epperley’s argument has merit as to 2014-KA-0259. As mentioned at the outset, the Boykin form that Mr. Epperley signed for 2014-KA-0259 stated that the sentence would be “concurrent.” The form did not indicate that the sentence would be consecutive with any other sentence. However, at the sentencing hearing on August 22, 2013, the district court sentenced Mr. Epperley to five years, suspended, with active probation to run concurrently with each count, as well as Case Nos. 501-105 [2014-KA-0275], and 503-758 [2014-KA-0278] and consecutively to Case Nos. 500-898 [2014-KA-0262], 508-788 [2014-KA-0281], and 508-935 [2014-KA-0282],
Plea agreements are considered contracts between the State and the defendant. State v. Anthony, 99-0107, p. 5 (La.App. 4 Cir. 4/7/99), 735 So.2d 746, 749 (citing State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144). The Louisiana Supreme Court, however, has noted that commercial contract law can serve only by analogy because plea agreements are constitutional contracts. Id. Accordingly, a defendant’s constitutional right to fairness may be broader than his or her rights under the law of contract. Id, 99-0107 at p. 5, 735 So.2d at 750.
A guilty plea is constitutionally infirm when the terms of the plea agreement are not honored. State v. LaGarde, 618 So.2d 545, 546 (La.App. 4th Cir.1993); State v. Dixon, 449 So.2d 463, 464 (La.1984). When a plea agreement is breached, the defendant has the option of specific performance of the agreement or nullification or withdrawal of the plea. State v. Solomon, 11-0236, pp. 5-6 (La.App. 4 Cir. 11/23/11), 80 So.3d 605, 608 ivrit granted in part, 12-0202 (La.6/22/12), 90 So.3d 1040.
Applying these principles, we find that the district court’s failure to make Mr. Epperley’s sentence in 2014-KA-0259 concurrent is constitutionally infirm. 121 Mr. Epperley signed a Boykin form that indicated his sentence would be concurrent and not consecutive. The State has failed to perform its duty under the contract. Mr. Epperley asks that the condition stating his sentence be served consecutively be vacated or, in the alternative, that he be allowed to withdraw his guilty plea. Accordingly, we remand to the district court with instructions to amend Mr. Epperley’s sentence in accord with.the terms of his plea agreement and make his sentence in 2014-KA-0259 concurrent with all of his other sentences.
*736 With the exception of the Boykin form signed in connection with 2014-KA-0259, the Boykin forms in the remaining five cases indicate that the sentences would be served concurrently and consecutively. Although the district court stated on November 30, 2011, that Mr. Epper-ley’s sentences would be concurrent, this was a misstatement by the district court. The Boykin forms clearly indicated that Mr. Epperley’s sentences would be concurrent with specifically annunciated cases and consecutive with other cases. The Louisiana Supreme Court has held that advice regarding sentencing is not a Boy-kin error and is thus subject to the harmless error standard. State v. Guzman, 99-1753, p. 9 (La.5/16/00), 769 So.2d 1158, 1164; State v. Nuccio, 454 So.2d 93, 104 (La.1984). Mr. Epperley has not shown that he was harmed by the district court’s misstatements. He knowingly and willingly signed five Boykin forms that indicated that several of his sentences would be consecutive. Further, he was informed at two hearings after November 30, 2011, that his sentences were consecutive.[30] Thus, we find that the district court’s error was harmless.

(Hi) Restitution

|j>aMr. Epperley argues that the amounts of restitution imposed in 2014-KA-0259, 2014-KA-0275, and 2014-KA-0278 were excessive. He contends that, pursuant to La.C.Cr.P. art. 895.1, the amount of restitution must match the amount of the loss. Mr. Epperley cites State v. Alleman, 439 So.2d 418, 419 (La.1983), in which the Louisiana Supreme Court stated that “[t]he sentencing judge is expressly authorized to require the condition of ‘restitution to the aggrieved party for damage or loss caused by his offense.’ ” (quoting La.C.Cr.P. art. 895(A)(7)).
A review of the restitution hearing transcript evidences that Mr. Epperley’s counsel objected to the amounts of restitution imposed as to 2014-KA-0259, 2014-KA-0275, and 2014-KA-0278.[31] Thus, he preserved this issue for review on appeal.
With regard to 2014-KA-0259, the district court imposed restitution of one-half of $61,161.42,[32] or $30,580.71.[33] The State contends that Pei Lin Kathy Cheng testified at the restitution hearing that she and her husband, Peter Cheng, secured a home loan from Fidelity Home Savings Bank, which paid EPCO[34] a total of $321,804.08. The State explains that the loan was in the Chengs’ name, thus they are indebted to the bank for that amount. The State contends that the Chengs also paid Mr. Ep-perley $48,954.82 from their personal savings account pursuant to the contract; the Chengs paid vendors and subcontractors over $15,000.00 in bank | ^draws from their personal savings account; and the Chengs incurred $12,206.60 in subcontractor liens on their home. Thus, the State, submits *737 that the total amount that the Chengs paid EPCO, or the amount that EPCO failed to apply towards the project, was no less than $76,161.42.
With regard to 2014-KA-0275, the district court imposed $253,681.00[35] in restitution. The State contends that Ernest Thibodeaux testified that he lost $234,000.00 pursuant to the EPCO contract. Additionally, the State notes that Mr. Thibodeaux testified that he paid EPCO’s vendors an additional $21,000.00 after EPCO advised him it would “fast track” his project if he paid the vendors. Mr. Thibodeaux further testified that he paid $2,850.00 for an alarm system that was not completed, and he incurred a $19,681.75 subcontractor lien on his home as a result of EPCO’s failure to pay, resulting in a total loss suffered of $277,531.75.
With regard to 2014-KA-0278, the district court imposed $100,681.01[36] in restitution. The State submits that Patrick Garner testified that he lost $94,741.01 pursuant to the EPCO contract and $16,000.00 additionally paid to EPCO for materials that EPCO never purchased. The State further submits that Mr. Garner further testified that he incurred $5,940.00 in subcontractor liens as a result of EPCO’s failure to pay, resulting in a total loss of $116,231.01.
Mr. Epperley further argues that La. R.S. 14:202 was not intended to allow victims to seek restitution for claims that have an available civil remedy. State v. Paster, 373 So.2d 170, 176 (La.1979); State v. Deselle, 509 So.2d 809 (La.App. 1st Cir.1987); and State v. Bryan, 535 So.2d 815 (La.App. 2nd Cir.1988). He argues that any claim other than the amounts of the liens should be pursued in civil proceedings, as any amount of restitution over the amount of the liens was excessive. State v. Diaz, 615 So.2d 1336 (La.1993).[37]
In support, Mr. Epperley relies on this court’s decision in State v. Portie, 08-1580, p. 2 (La.App. 4 Cir. 9/16/09), 22 So.3d 213, 215, in which the defendant was convicted of attempted theft of property valued at $17,150.00. The district court ordered restitution in the amount of $2,500.00, the victim’s deductible, and $36,053.91 to be paid to the victim’s insurer. Id., 08-1580 at p. 14, 22 So.3d at 221. This court reversed, finding that requiring the defendant to pay the victim’s insurer as a condition of probation was contrary to law because the insurance company was not the *738 victim of the crime, but rather “was merely fulfilling a contractual obligation to indemnify the insured for his loss and as such is not the functional equivalent of a victim pursuant to article 895.1.” Id., 08-1580 at p. 15, 22 So.3d at 222. Accordingly, this court determined that the insurance company was required to pursue a separate civil remedy because “civil liability cannot be a function of restitution in criminal matters.” Id., 08-1580 at p. 15-16, 22 So.3d at 222. | ¡¡¡¡However, in this case, restitution was only ordered to the actual victims of Mr. Epperley’s thefts and misappropriations. Accordingly, Mr. Ep-perley’s reliance upon Portie is misplaced.
With regard to Mr. Epperley’s argument that the restitution amounts he was ordered to pay were excessive, the State argues that pursuant to La.C.Cr.P. art. 895.1, an order of restitution is mandatory when the victim has suffered a monetary loss pursuant to damage to or loss of property. Additionally, the State cites State v. McGee, 08-395, p. 6 (La.App. 5 Cir. 10/28/08), 996 So.2d 1191, 1194, for the proposition that “[c]ourts have wide discretion regarding the imposition of restitution when it is reasonably related to defendant’s rehabilitation” and “[i]n ordering restitution, the trial judge has discretion and his decision will not be disturbed absent an abuse of this discretion.”
At the hearing regarding the motion to reconsider sentence, the district court stated:
All right. I’ll note for the [rjecord, the in the Matter of State versus David Epperley, as well as his brother Randall Epperley, the process by which we got to this point has been kind of long and tortured. And on the eve of trial, Mr. Epperley’s attorney’s worked out — made the decision to have Mr. Epperley enter a [p]lea of [gjuilty and submit himself to restitution hearings as to each separate case.
He admitted his guilt, was willing to submit to restitution hearings and dispute restitution amounts. That took place over several Fridays, full Fridays of hearing testimony from several different parties involved in these six different cases. And, ultimately, the restitution amount decision was made by me. I had the opportunity to hear everything that [counsel for Defendant] has put on the [r]ecord as well.
And based upon my interpretation of 895:1, I find that I’m very comfortable with the restitution amounts that were ordered, and your Motion to Reconsider Sentence is denied.
I’ll also address that first point you made in regards to making the sentences consecutive. I’ll note for the [r]ecord that the ultimate |2(jamount of restitution combined is almost half a million dollars. And the fact that he’s a first offender doesn’t change the fact that he had several multiple felony offenses pending in Orleans Parish, as well as Jefferson Parish. And I found that the egregiousness of what he entered — willingly entered pleas of guilty to was such that if he failed to pay what he agreed to pay, or disputed to pay, I was perfectly comfortable revoking his probation and making the sentences consecutive to the amount of time that I felt was adequate for the amount of restitution that I believed he owed.
That’s just my interpretation of why I decided .to make these sentences consecutive, as opposed to concurrent. So I’ll leave it at that.
As previously noted, “[a] trial court has vast discretion in sentencing decisions, including the ordering of restitution.” Portie, 08-1580 at p. 23, 22 So.3d at 227 (citations omitted). The amount of restitution ordered in each case by the *739 district court is well-supported by the victims’? testimony and the evidence, and Mr. Epperley has not demonstrated that the district court abused its discretion. With regard to the restitution amount that was provided on Mr. Epperle/s Boykin forms, Mr. Epperley waived his right to appeal both the length of his sentences and the amount of restitution imposed for those cases. Accordingly, this assignment of error lacks merit.

DECREE

For the foregoing reasons, the portion of the defendant’s sentence in 2014-KA-0259 ordering that his sentence be served consecutively with other sentences is vacated and the matter is remanded with instructions to the district court for resentencing in accordance with his plea agreement. The defendant’s sentence in 2014-KA-0278 is amended to correct the amount of restitution to $100,681.01. In all other respects, the defendant’s convictions and sentences are affirmed.
AFFIRMED IN PART, AS AMENDED; VACATED IN PART; AND REMANDED WITH INSTRUCTIONS.

. The six cases are as follows: 2014-KA-0259, 2014-KA-0262, 2014-KA-0275, 2014-KA-0278, 2014-KA-0281, and 2014-KA-0282.

. This is 2014-KA-0259 (CDC Case No. 500-897). Randall Epperley, defendant’s brother and business partner, was also charged in this bill of information.

. This is 2014-KA-0262 (CDC Case No. 500-898). Randall Epperley was also charged in this bill of information.

. This is 2014-KA-0275 (CDC Case No. 501-105).

. This is 2014-KA-0278 (CDC Case No. 503-758).

. This is 2014-KA-0281 (CDC Case No. 508-788).

. This is 2014-KA-0282 (CDC Case No. 508-935).

. On appeal, Mr. Epperley reserves his right to address the ineffectiveness of his counsel for rendering advice to plead guilty in an application for post-conviction relief.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. According to the State, in connection with the guilty pleas, the State agreed to allow Mr. Epperley to withdraw all the guilty pleas and plea to misdemeanor charges if he paid full restitution to the victims in all six cases within a five-year probationary period.

. Although this Boykin form indicates the sentence would be "concurrent,” it does not reference the other cases.

. The Boykin form in each case indicates "AP” for active probation.

. This amount was divided evenly between David and Randall Epperley; thus, Mr. Ep-perley's share was $30,580.71.

. When Mr. Epperley pled guilty in all of six of his cases on November 30, 2011, the district court reset sentencing in all of the cases until after it conducted the restitution hearing as to three of his cases.

. In all three of the appeals, this court stated that in the event of a discrepancy between the minutes of a hearing and the transcript, the transcript prevails. See State v. Watson, 001580, p. 3, n. 4 (La.5/14/02), 817 So.2d 81, 83. Therefore, this Court concluded that although the trial court imposed the amounts of restitution that the appellants must pay, it did not actually impose sentences in these three cases. This court cited La.C.Cr.P. art. 912C(1) which provides that a defendant may appeal from a "judgment which imposes sentence.” This court thus held that the appeals were taken prematurely.

. This sentence conflicts with the Boykin form in 2014-KA-0259, as the plea form does not reference the other cases or indicate that the sentence is to be served consecutively with 2014-KA-0262, 2014-KA-0281, and 2014-KA-0282. Rather, the Boykin form states that the sentence is “concurrent."

. A review of the record reveals that this was a misstatement by the district court. The minute entry from the January 27, 2012 restitution hearing states that $106,681.01 in restitution was imposed as to 2014-KA-0278. However, a review of the transcript reveals that the district court actually imposed $100,681.01 in restitution as to 2014-KA-0258. The transcript states as follows:
THE COURT:
As to Case No. 503-758 [2014-KA-0278] against Mr. David Epperley, Mr. Patrick Garner paid you, out of pocket, [$]94,-741.01. I’m now ordering you to pay that back to Mr. Gamer. Additionally, a lien was placed on his property for the amount of $5,940. I’m now ordering you to pay Mr. Gamer $100,681.01 with the hope and anticipation that Mr. Garner will turn around and pay $5,940 to the subcontractors owed to EppCo [sic] for the work done on their house.
As mentioned previously in this opinion, in the event of a discrepancy between the minutes of a hearing and the transcript, the transcript prevails. See State v. Watson, 001580, p. 3, n. 4 (La.5/14/02), 817 So.2d 81, 83. Accordingly, we amend Mr. Epperley's sentence to state the correct amount of restitution for 2014-KA-0278-$100,681.01.

. La. R.S. 14:202 provides:
A. No person, contractor, subcontractor, or agent of a contractor or subcontractor, who has received money on account of a contract for the construction, erection, or repair of a building, structure, or other improvement, including contracts and mortgages for interim financing, shall knowingly fail to apply the money received as necessary to settle claims for material and labor due for the construction or under the contract.
B. When the amount misapplied is one thousand dollars or less, whoever violates the provisions of this Section shall be fined not less than one hundred dollars nor more than five hundred dollars, or imprisoned for not less than ninety days nor more than six months, or both.
C. When the amount misapplied is greater than one thousand dollars, whoever violates this Section shall be fined not less than one hundred dollars nor more than five hundred dollars, or imprisoned with or without hard labor for not less than ninety days nor more than six months, or both, for each one thousand dollars in misapplied funds, provided that the aggregate imprisonment shall not exceed five years.
D.Any person, contractor, subcontractor, or agent of a contractor or subcontractor who knowingly fails to apply construction contract payments as required in Subsection A shall pay to the court, and the court shall transfer to the person whose construction contract payments were misapplied, an amount equal to the sum of the payments not properly applied and any additional legal costs resulting from the misapplication of construction fund payments, including a fee charged by the clerk of court for handling such payments.

. La.C.Cr.P. art. 470 provides that ‘‘[v]alue, price, or amount of damage need not be alleged in the indictment, unless such allegation is essential to charge or determine the grade of the offense.”

. The State emphasizes that Mr. Epperley failed to address La. C.Cr.P. art. 881.2.

. The three cases are follows: 2014-KA-0262, 2014-KA-0281, and 2014-KA-0282.

. The amended version of La. R.S. 14:67(B)(2) provides “[w]hen the misappropriation or taking amounts to a value of five hundred dollars or more, but less than a value of one thousand five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than five years, or may be fined not more than two thousand dollars, or both.”

. Mr. Epperley reserved his right to address in an application for post-conviction relief the following issues: that he was denied effective assistance of counsel; that he was counseled to plead guilty by an attorney with a conflict of interest; and that the advice he received was without considering defenses including: a) a Motion to Quash or bill of particulars was needed in the misapplication counts, where no amount was stated; b) the insufficiency of evidence of intent to permanently deprive and misapplication to the charges; and c) the applicable sentence for the date of the alleged theft.

. Mr. Epperley concedes that all of his sentences were suspended, but contends that the sentences were nevertheless excessive.

. Mr. Epperley concedes that in 2014-KA-275, the amount of the lien was over $10,000.00, but he nevertheless contends that the five-year sentence was excessive consider-' ing his first-offender status and the circumstances of the case.

. La.C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

. La.C.Cr.P. art. 481 provides:
An indictment for theft may include several counts against the same defendant for distinct acts of theft, and the aggregate amount of the thefts shall determine the grade of the offense charged. If a defendant misappropriates money or other things of value, which were entrusted to him by virtue of his office, employment, or any fiduciary relationship, he may be charged in one count with theft of the aggregate amount misappropriated by him during the entire time of his holding the office, employment, or fiduciary relationship.

.The Honeycutt court held that advice regarding sentencing is not a Boykin error and is thus subject to the harmless error analysis. The court concluded that the misstatement by the district court regarding the maximum sentence for attempted armed robbery was a harmless error because the defendant was informed that his maximum sentence would be 30 years under his plea agreement. Honeycutt, 41,601 at p. 8, 953 So.2d at 920.

. At the August 22, 2013 hearing, immediately prior to the district court imposing Mr. Epperley's sentence, the following colloquy occurred:
[Counsel for Defendant]:
Judge, just before you begin sentencing [David] Epperley, if I could just ask for clarity in the record. When you’re running the two probationary sentences consecutively, are they one probation ends and the next one begins [sic]? Or is the probationary periods [sic] concurrent and the time— if it were to be revoked — would be consecutive?
THE COURT:
One ends and one begins.
[Counsel for Defendant]:
Thank you.

. He was informed at the restitution hearing on January 27, 2012 and at his sentencing hearing on August 22, 2013 that his sentences were consecutive.

. The amounts of restitution in Mr. Epper-ley's other three cases (2014-KA-0262, 2014-KA-0281 and 2014-KA-0282) were agreed to and listed on the Boykin forms that Mr. Ep-perley signed. Thus, Mr. Epperley may only seek review of the amounts that were imposed pursuant to the restitution hearing.

. The $61,161.42 was comprised of the $48,954.82 paid from their personal savings account and a lien in the amount of $12,206.60.

. As previously noted, payment of the other one-half of the restitution was allocated to Mr. Epperley’s brother and co-defendant, Randall Epperley.

. EPCO was the name of the Epperley brothers’ construction company.

. The $253,681.00 was comprised of the $234,000.00 paid pursuant to the contract and a lien in the amount of $19,681.

. While the State submits, that restitution was owed for this case totaling $106,681.01, as noted previously, a review of the transcript reveals the district court intended to impose $100,681.01. The $100,681.01 was comprised of the $94,741.01 that Mr. Gamer testified he lost plus subcontractor liens of $5,940.00.

. Mr. Epperley relies upon the following language from Diaz, 615 So.2d at 1337:
La.Code Crim.Proc. art. 895.1 A authorizes the court, when the victim has suffered any “monetary loss or medical expense,” to order payment of restitution "in a reasonable sum not to exceed the actual pecuniary loss to the victim.” (emphasis added). La. Code Crim.Proc. art. 895.IB further authorizes the court to order payment "to the victim to compensate him for his loss and inconvenience,” which amount may be in addition to the amounts ordered under Article 895.1 A. These articles focus primarily on restitution for pecuniary losses caused by the criminal activity and not on providing criminal sanctions to enforce collection of civil damages (including non-pecuniary damages). On resentencing the judge should determine a specific (or determinable) reasonable amount of restitution, and should order payment "either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.” La.C.Cr.P. art. 895.1A.